| | |
|---|---|
| **DISTRICT COURT, CITY & COUNTY OF DENVER, STATE OF COLORADO**<br><br>Court Address: Denver City & County Building<br>　　　　　　　　1437 Bannock Street<br>　　　　　　　　Denver, CO 80202<br>　　　　　　　　(303) 606-2300 | DATE FILED<br>July 15, 2025 9:37 AM<br>FILING ID: CB3C8CCBBCA30<br>CASE NUMBER: 2025CV32492 |
| **Plaintiff:**<br>THE WHITING-TURNER CONTRACTING COMPANY<br><br>v.<br><br>**Defendants:**<br>LEGACY MECHANICAL, INC; and AMERISURE INSURANCE COMPANY | Δ  **COURT USE ONLY**  Δ |
| **Attorneys for Plaintiff The Whiting-Turner Contracting Company**<br>Buck S. Beltzer, #37804<br>Alex King, #54093<br>Bᴇʟᴛᴢᴇʀ Bᴀɴɢᴇʀᴛ ᴀɴᴅ Gᴜɴɴᴇʟʟ LLP<br>5420 S. Quebec St., Suite 103<br>Greenwood Village, CO 80111<br>Telephone: (720) 576-7225<br>E-mail: buck@bbglaw.com; alex@bbglaw.com | Case Number:<br><br>Division: |
| **COMPLAINT AND JURY DEMAND** ||

Plaintiff The Whiting-Turner Contracting Company ("Whiting Turner") for its Complaint against Defendants Legacy Mechanical, Inc ("Legacy") and Amerisure Insurance Company ("Amerisure"), (collectively the "Defendants"), states and alleges as follows:

## PARTIES

1.　　Plaintiff Whiting Turner is a foreign corporation organized and existing under the laws of the State of Maryland, with its principal place of business at 300 East Joppa Road, 8th Floor, Baltimore, MD 21286. Whiting Turner's local address is 7800 E Union Ave Suite 100, Denver, CO 80237.

2.　　At all times relevant hereto, Whiting Turner was in the business of providing

EXHIBIT

A

construction general contracting services.

3.    At all times relevant hereto, Whiting Turner is authorized to do business in the State of Colorado.

4.    Upon information and belief, Defendant Legacy is a corporation organized and existing under the laws of the State of Colorado with its principal place of business located at 6400 Broadway Suite 1, Denver, CO 80221.

5.    Legacy's registered agent is Scott M. Krum with an address of 6400 Broadway Suite 1, Denver, CO 80221.

6.    Upon information and belief, Defendant Amerisure is a foreign/other corporation organized and existing under the laws of the State of Michigan with its principal place of business located at 2677 Halsted Road, Farmington Hills, MI 48331-3586.

7.    Amerisure's registered agent is the Cogency Global Inc. located at 600 17th St Suite 1450S, Denver, CO 80202.

## VENUE AND JURISDICTION

8.    This Court has jurisdiction over this action pursuant to Colo. Const. Art. VI § 9 and C.R.S. § 13-1-124(1) because the Defendants have transacted business within the State of Colorado.

9.    Venue is proper in this Court pursuant to C.R.C.P. 98(c) because this action arises from a contract performed in the City and County of Denver, Colorado.

## GENERAL ALLEGATIONS

### *The Property, the Project, and Subcontract*

10.    3500 Blake Street Owners, LLC ("BSO") is the owner or reputed owner of real property located at 3500 Blake St., Denver, CO 80205 ("Property").

2

11.    BSO is also the owner of the T3 3500 Blake Street Office Building project built on the Property generally consisting of a six-story multi-use building which includes residences ("Project").

12.    On or about November 1, 2021, Whiting Turner and BSO entered into a contract between Owner and Contractor, for Whiting Turner to perform general contracting services, including hiring and managing subcontractors, for the construction of the Project.

13.    On or about November 15, 2021, Whiting Turner and Legacy entered into a Subcontract, (the "Subcontract") whereby Legacy agreed to perform the heating, ventilating and air conditioning and plumbing work (the "Scope of Work") for the Project. The Subcontract is attached as **Exhibit A.**

14.    The Subcontract states: "All such work shall be done to the satisfaction of the Owner, the Architect, and/or Engineer, and the Contractor in accordance with the Contract Documents." Ex. A at 3, Article 3(a).

15.    The Subcontract also states:

The Subcontractor represents and warrants that it is an expert in the particular line or lines of work herein contracted to be done and that it is competent to know whether the materials, methods and apparatus specified for this work are sufficient and suitable to secure the results contemplated by the Contract Documents. The Subcontractor shall be responsible for fulfilling the requirements of the Contract Documents. Subcontractor agrees to cooperate in carrying out Contractor's quality assurance program including, but not limited to, furnishing necessary documentation and facilitating inspections and quality checks.

Ex. A at 3, Article 3(c).

16.    Pursuant to the Subcontract, Legacy was obligated to "warrant[] its workmanship and materials furnished against any defect, faults, or damages arising therefrom during the period of construction and for a period of one year from the date of final completion of the Project" and agreed to remedy any "defective workmanship, material or damages at the request of the

Contractor…". Ex. A at 7, Article 9(i).

17.     Pursuant to the Subcontract, Legacy was obligated to follow all codes as required,

as shown in the following provision of the Subcontract:

> Subcontractor shall comply with all applicable federal, state, and local laws and regulations by which it is bound and shall perform this Subcontract in strict conformity with applicable laws, codes, ordinances, rules, regulations and requirements of Federal, State, County and Municipal authorities and of the National Board of Fire Underwriters and any local fire Underwriters and any local fire insurance exchange now or hereafter in effect. In the event of any discrepancy between the present requirements of such laws or authorities and the provisions of this Subcontract, the former shall govern, and the Subcontractor shall perform the work as required thereby at no extra cost.

Ex. A at 7, Article 9(j).

18.     Pursuant to the Subcontract, Legacy was obligated to obtain general liability

insurance:

> "The Subcontractor agrees to provide and furnish prior to commencing work, certificates in duplicate of insurance covering its work under this Contract for Worker's Compensation, General Liability Insurance to include Bodily Injury and Property Damage Insurance, and other insurance with limits and coverages as set forth in the Contract Documents or in Exhibit A attached hereto, whichever is greater."

Ex. A at 8, Article 9(o).

19.     Under Exhibit A to the Subcontract containing Legacy's insurance obligations,

Whiting Turner was required to be named as an additional insured on Legacy's general liability

insurance policy. Ex. A at 12-13.

20.     Amerisure issued Policy #CPP2121784 to Legacy and Legacy named Whiting

Turner as an additional insured on Legacy's policy. A copy of the certificate of insurance is

attached as **Exhibit B**.

21.     The Project reached Substantial Completion on or around February 1, 2024. The

Substantial Completion Certificate is attached as **Exhibit C**.

### ***The Storm Pipe Design and Subsequent Failure***

4

22.     The roof drain system is intended to remove water from the roof through internal pipes inside the building to a storm water drain.

23.     During construction, the need to add restraints was first documented in a field observations report dated May 15, 2023. The May Observation Report is attached as **Exhibit D.**

24.      Legay acknowledged the need for restraints in its response to the May Observation Report. Ex. D at p.7.

25.     Legacy's adding of restraints still did not comply with applicable code.

26.     Whiting-Turner and Alvine's concern over the lack of enough restraints on the roof drain system were confirmed after the July 20, 2024 rain event at the Project (the "Occurrence"). The Storm Pipe Failure Letter is attached as **Exhibit E.**

27.     The type of pipe/coupling installed was HUSKY HD 2000 Coupling for joining No-Hub pipes and fittings.  The manufacturer directions state: "Horizontal pipe and fittings five inches and larger must be suitably braced to prevent horizontal movement. This **must** be done at every branch opening or change of direction by the use of braces, blocks, rodding or other suitable method, to prevent movement or joint separation." (emphasis added). Husky Installation Suggestions attached hereto as **Exhibit F**.

28.     The Project specifications at Section 22 1200 2.2.B.2.b state: "Vertical and horizontal offsets shall be restrained at each joint in an approved manner as required by code or the regulations of the authorities having jurisdiction and if each horizontal joint is adequately supported at each joint with an approved hanger assembly." Ex. G at 2.

29.     Denver code requirements also require restraints for horizontal no-hub piping as stated in IPC 308.7: "For pipe sizes greater than four inches (102 mm), restraints shall be provided for drain pipes utilizing mechanical joints at all changes in direction and at all changes

in diameter greater than two pipe sizes. Braces, blocks, rodding and other suitable methods as specified by the coupling manufacturer shall be utilized." Ex. G at 3.

30.    Despite the restraints being required by code and despite Legacy being expressly directed to install them, Legacy refused to install pipe restraints on the Project, and instead installed pipe restraints only at the 90-degree changes at the bottom of the risers, not at all 90-degree changes in direction as referenced in Exhibit E.

31.    On or around July 20, 2024, because of the missing restraints, the roof drain system failed during the Occurrence, causing extensive damage to the drain system as well as resultant property damage to the facility.

32.    The roof drain system failure released significant amounts of water into the building, causing extensive damage to the Project, including but not limited to, the following:

    a.    Fitness center locker room elements (lights, showers, wall tile, drywall, paint);

    b.    Fitness center flooring (tile, electrical);

    c.    Fitness center wall tile (tile, drywall);

    d.    Fitness center metal panels;

    e.    Garage elevator lobby wall tile levels L1-B3 (tile, drywall, paint);

    f.    Garage elevator parts/smarts (controllers, access key switches, hall position indicators, pit access alerts);

    g.    Garage elevator shaft wall (shaft liner and associated fire caulking);

    h.    BOH FRP (drywall, FRP board and trim); and

    i.    Misc drywall replacement (FACP room, PM corridor, PM office, future retail space, back of house areas).

33.    Whiting Turner was notified of the failure and promptly investigated and began

repair efforts to mitigate damage to the Property and Project.

34.     The Owner also mitigated damage to the Property and Project by promptly hiring a restoration contractor to dry out the building.

35.     On or around July 24, 2024, Alvine Engineering ("Alvine"), attended an emergency on-site meeting with Whiting Turner and Legacy, to investigate issues with the storm piping at the Project. On or around July 26, 2024, Alvine sent a letter with their determination regarding the rain event and cause of the property damage (the "Report").  See **Exhibit G.**

36.     Alvine determined that the damage occurred because the roof drain storm piping was missing restraints.  "Because of the type of failure and the locations, the expected cause of failure is the lack of restraints to support the piping against additional forces created through the high-volume storm charge." Ex. G at 2.

37.     Two failures occurred at 45º elbows downstream from a vertical offset where the elbow pulled away from the horizontal line and one occurred midstream of the piping; and some failures were caused by couplings that were not torqued properly. Ex. G at 1.

38.     Without the required restraints, the drain system separated from itself at numerous points where it changed directions allowing storm water to flood the building. Improper torquing of certain couplings on the drain system also contributed to the flood damage.

39.     Legacy did not install the no-hub piping and couplings according to manufacturer instructions.

40.     Legacy did not install the no-hub piping and couplings in accordance with the Subcontract's requirements nor in accordance with the applicable code requirements.

41.     The Owner, Alvine and Whiting Turner have all concluded that the failure of the roof drains and costs associated with mitigation should and will be Legacy's responsibility due to

the non-code compliant installation of the storm drain system. Ex. E at 2.

### *The Insurance Claim*

42.     Upon information and belief, in or around August 15, 2024, Legacy filed an insurance claim for the Occurrence damage, Claim Number 2654436 (the "Claim").

43.     Upon information and belief, Amerisure appointed Engle Martin as claim manager to process and manage the Claim, at EM File Number NCP028147.

44.     On December 17, 2024, Whiting Turner confirmed to Amerisure, through Engle Martin, that all resultant property repair work had been completed and submitted the final invoices and back up to substantiate the work performed.

45.     Neither Amerisure nor Engle Martin have substantively responded to Whiting Turner regarding the status of the Claim nor provided an acknowledgement of coverage or reservation of rights.

46.     Whiting Turner has incurred a liability of $456,948.12 for the repairs to the property damage caused by the Occurrence.

47.     In addition, the Owner has incurred $53,916.99 liability for the repairs to the Property caused by the Occurrence.

### *The January Demand Letter to Legacy*

48.     On or around January 31, 2025, Whiting Turner sent Legacy and Amerisure a Notice of Damages and Demand to Cure Letter (the "Cure Letter"), outlining the costs associated with remediation and repairs from Legacy's improper, defective, and negligent work in its installation of the storm drain system, totaling $510,865.11.  The Cure Letter is attached hereto as **Exhibit H.**

49.     Legacy has provided no substantive response or taken any action after receiving

the January 31, 2025 Cure Letter.

50.     Amerisure responded on February 19, 2025, in which it requested more documentation and support and claimed Whiting Turner does not "own[] the rights to recovery on this one as it is my understanding they are not the property owner." Email Correspondence is attached here as **Exhibit I**.

### *The March Demand Letter to LEGACY*

51.     On or around March 20, 2025, Whiting Turner sent Legacy and Amerisure a Second Notice of Damages and Demand to Cure Letter (the "Second Cure Letter"), demanding that Legacy pay the costs to repair the water damage. A Certificate of Insurance was included with this letter which listed Whiting Turner as an additional insured.  The Second Cure Letter is attached hereto as **Exhibit J.**

52.     Legacy also did not provide a reasonable or substantive response to this letter.

53.     Amerisure likewise has not provided a reasonable or substantive response to the Second Cure Letter, nor provided any payments on the claim.

### FIRST CLAIM FOR RELIEF
(Breach of Contract against Legacy)

54.     Whiting Turner incorporates and realleges the preceding paragraphs as if fully set forth herein.

55.     The Subcontract is a valid and enforceable contract.

56.     Legacy breached the Subcontract by, *inter alia*:

a.   Failing to properly install the roof drain system;

b.   Failing to properly install proper restraints to support the roof drain piping system according to the applicable Project design requirements;

c.   Failing to follow manufacturer and code requirements on roof drain system

installation; and

    d.   Failing to fully compensate Whiting Turner for damages and costs for the

        repair work.

57.    Whiting Turner performed its obligations and/or was excused from performing its

obligations and otherwise satisfied all conditions precedent to its claim for payments for the

repair work Whiting Turner commenced after the rain event.

58.    Legacy's material breach of the Subcontract has caused Whiting Turner damages

in an amount to be proven at trial.

59.    As a direct and proximate result of Legacy's breaches of the Subcontract, Whiting

Turner has incurred damages, including, but not limited to labor and other direct costs to repair

Legacy's work, reasonable attorneys' fees and costs, plus interest.

<u>SECOND CLAIM FOR RELIEF</u>
**(Negligence against Legacy)**

60.    Whiting Turner incorporates and realleges the preceding paragraphs as if fully set

forth herein.

61.    Legacy had a duty of care to Whiting Turner to install the roof drain system in

accordance with the plans of the Project, manufacturer instructions, and the Denver building

code.

62.    Legacy breached its duty of care when it did not install the roof drain system

properly.

63.    Legacy's negligent installation required Whiting Turner to repair the drain system

and the resultant damage the failure of the roof drain system caused to the facility.

64.    Whiting Turner has been damaged by Legacy's negligence in an amount to be

proven at trial.

### THIRD CLAIM FOR RELIEF
### (Breach of Warranty against Legacy)

65.    Whiting Turner incorporates and realleges the preceding paragraphs as if fully set forth herein.

66.    In the Subcontract, Legacy represented and warranted that it is an expert and possessed the skills to complete the Scope of Work to which it agreed in the Subcontract.

67.    Legacy agreed to warrant its work was performed in accordance with the Subcontract and applicable requirements.

68.    Legacy's installation of the roof drain system did not perform as Legacy promised.

69.    Legacy breached its obligation to Whiting Turner to warrant its work.

70.    Whiting Turner has been damaged by Legacy's breach of warranty in an amount to be proved at trial.

### FOURTH CLAIM FOR RELIEF
### (Bad Faith against Amerisure under C.R.S. § 10-3-1115)

71.    Whiting Turner incorporates and realleges the preceding paragraphs as if fully set forth herein.

72.    Whiting Turner is an additional insured to Legacy's general liability policy issued by Amerisure.

73.    Whiting Turner submitted its claim to Amerisure as an additional insured through Claim #2654436.

74.    Amerisure has unreasonably delayed payment to Whiting Turner for the resultant property damage caused by Legacy's failures.

75.    Amerisure has not provided any reasonable basis for its actions in delaying or authorizing payment for Whiting Turner's claim.

76.     Whiting Turner has been damaged by Amerisure's bad faith in administration of its policy payments in an amount to be proven at trial.

## FIFTH CLAIM FOR RELIEF
### (Breach of Contract Against Amerisure)

77.     Whiting Turner incorporates and realleges the preceding paragraphs as if fully set forth herein.

78.     Amerisure issued an insurance policy to Whiting Turner as an insured, which is a legally enforceable contract.

79.     Under the policy, Amerisure has certain obligations to cover the claim or provide a reasonable basis for denial of the claim.

80.     Amerisure has failed to honor its obligations under the policy.

81.     Amerisure's action materially breached its obligations under the policy.

82.     Whiting Turner fully performed or was excused from performing its obligations under the policy and satisfied all conditions precedent to this action.

83.     Whiting Turner has been damaged by Amerisure's wrongful refusal and failures to fulfill its obligations under the policy in an amount to be proven at trial.

## PRAYER FOR RELIEF

WHEREFORE, Whiting Turner respectfully requests that judgment be entered as follows:

A.  For Judgment against Legacy and Amerisure on Whiting Turner's Breach of Contract claim in an amount to be proven at trial;

B.  For Judgment against Legacy on Whiting Turner's negligence claim in an amount to be proven at trial;

C.  For Judgment against Amerisure on Whiting Turner's Bad Faith claim in an amount to be proven at trial, including treble damages and an award of costs and attorneys' fees;

D.  For pre-judgment and post-judgment interest as provided by statute or agreement of the parties;

E.  For costs and attorneys' fees as provided by law or the Subcontract between the parties;

F.  For trial by jury; and

G.  For such other and further relief as the Court deems proper.

**WHITING TURNER DEMANDS A JURY ON ALL ISSUES SO TRIABLE**

Respectfully submitted this 15th day of July, 2025.

BELTZER BANGERT & GUNNELL LLP

/s/ Alex King
Buck S. Beltzer, #37804
Alex King, #54093
Beltzer Bangert & Gunnell LLP
5420 Quebec Street, Ste. 103
Greenwood Village, CO 80111
(720) 576-7225
E-mail: buck@bbglaw.com; alex@bbglaw.com

*Attorneys for The Whiting-Turner Contracting Company*

Address for The Whiting-Turner Contracting Company:
7800 E Union Ave., Suite 100
Denver, CO 80237